UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEONNE, aka DIO W.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

6:23-cv-01425-JR

OPINION & ORDER

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits. Plaintiff asserts disability beginning November 1, 2017,[2] due to PTSD, schizoaffective disorder, major depression, anxiety,

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

[2] Plaintiff's application for benefits listed his disability onset date as June 1, 2015. Plaintiff's opening brief amended that date to November 1, 2017. *See* Pl. Br. at 2.

Page 1 – OPINION & ORDER

knee pain, back issues, high blood pressure, and irritable bowel syndrome. Tr. 255. Plaintiff's date last insured was June 30, 2021, meaning he must prove he was disabled between November 1, 2017, and June 30, 2021.

After a hearing held on February 27, 2023, an Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 15-29. Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons for discounting plaintiff's symptom testimony and failing to properly evaluate the medical opinion evidence of Drs. Barsukov and Cogbill.

A.      Plaintiff's Symptom Testimony

Plaintiff argues the ALJ failed to provide clear and convincing reasons supported by substantial evidence in discounting his symptom testimony. Pl. Br. at 11; *see Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (an ALJ must offer clear and convincing reasons for rejecting a claimant's testimony about their symptom severity). Specifically, plaintiff alleges the ALJ failed to provide clear and convincing reasons to reject his hearing testimony that, despite sleeping eleven hours a night, he is always tired and needs to nap twice a day for four to six hours. Pl. Br. at 11-19; Tr. 50-52, 286. According to plaintiff, the ALJ only generally addressed his sleep testimony, and did not clearly state what evidence undermined that testimony.

The ALJ concluded plaintiff's testimony regarding his sleep patterns was inconsistent with the record evidence, and the Court agrees. Tr. 25; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may consider prior inconsistent statements in discounting a plaintiff's testimony). Here, although plaintiff testified at the hearing that he sleeps all night and still requires two naps each day, statements regarding his sleep patterns varied greatly throughout the record. For example, in October 2019, plaintiff reported sleeping only one hour a night and "maybe napping two hours during the afternoon" and that this was a "chronic situation for him." Tr. 823.

In December 2019, plaintiff reported "sleeping well"—nine hours a night—after being prescribed propranolol. Tr. 821. In February 2020, plaintiff reported going to bed "around midnight" and then tossing and turning until "4:00 AM or 6:00 AM," claiming he rises "anywhere between 6:00 AM and noon." Tr. 861. In April 2021, plaintiff reported he was "very happy with prazosin effect for sleep." Tr. 1472. On May 24, 2021, plaintiff reported sleeping "anywhere from two to eleven hours a night" and he had trouble falling asleep and staying asleep. Tr. 1337. In a separate appointment on May 24, 2021, plaintiff reported having a "tough time sleeping" but that once asleep, he can stay asleep. Tr. 1472.

Plaintiff argues that "while the exact hours of sleep" reported may vary, the record consistently shows he experienced severe sleep impairments. Pl. Br. at 13. While it is true the record demonstrates plaintiff's difficulty with sleeping, these reports are inconsistent from record-to-record and even from day-to-day. There are also clear signs, as the ALJ noted, that plaintiff's symptoms improved with consistent treatment.[3] *See, e.g.*, Tr. 470, 821, 1021, 1184, 1464, 1472. Thus, the ALJ did not err in finding plaintiff's testimony of sleeping upwards of eighteen hours a day inconsistent with his medical records.

B.     Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the medical opinions of state agency doctors Sergiy Barsukov, Psy.D., and Kay Cogbill, M.D.  An ALJ must articulate how persuasive he finds the medical opinions in the record. 20 C.F.R. § 404.1520c(b). Factors to be considered in

---

[3] The ALJ incorrectly stated that plaintiff failed to proceed with a sleep study, in support of his symptom testimony evaluation. The record shows plaintiff did undergo a sleep study; however, the findings from that study lie outside the relevant time period for plaintiff's claims, and even if they did not, the study did not find any evidence of sleep epilepsy. Tr. 1956.

Page 3 – OPINION & ORDER

evaluating the persuasiveness of a medical source's opinion include supportability, consistency, the source's relationship with the claimant, and any source specialization. 20 CFR § 404.1520c(c). Although an ALJ need not articulate his consideration of all factors used to assess persuasiveness, he must at a minimum "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2).

1. Dr. Barsukov

Plaintiff argues the ALJ failed to "address the supportability and consistency" of Dr. Barsukov's assessed limitations of "asking simple questions" and "accepting criticism from supervisors." Pl. Br. at 7. Dr. Barsukov reviewed plaintiff's medical records and concluded plaintiff could carry out short instructions and sustain those instructions for full the workday and workweek but would struggle to ask simple questions and occasionally struggle with accepting criticism from supervisors. Tr. 114. The ALJ found Dr Barsukov's opinion to be partially persuasive, but concluded plaintiff had greater social limitations than those identified in his opinion. The ALJ thus limited plaintiff to only occasional supervisor, coworker, and public contact. Tr. 27.

The ALJ's analysis is sufficient for the Court to conclude that plaintiff's symptoms warranted limitations beyond those opined by Dr. Barsukov. Moreover, the limitation to simple work adequately addresses the concern identified with plaintiff's ability to ask questions. Limiting plaintiff to only occasional contact with supervisors adequately addressed concerns regarding occasional difficulties accepting criticism from supervisors. Indeed, both are practical and concrete RFC limitations that are supported by the record and consistent with clinical findings. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) (it is the ALJ's responsibility to translate and incorporate clinical findings into concrete limitations in the RFC). Although plaintiff

Page 4 – OPINION & ORDER

argues otherwise, Dr. Barsukov's exact words, that plaintiff "occasionally struggles with accepting criticism from supervisors," do not amount to a talismanic phrase the ALJ was required to use. The Court can plainly see the logical nexus between the limitation to occasional supervisor contact and an occasional struggle accepting criticism from supervisors. *See Dennis v. Colvin*, 2015 WL 3867506. at *7 (D. Or. June 20, 2015) (noting that an ALJ does not err when an RFC limitation bears a logical nexus to the limitations at issue (quoting *Gentry v. Colvin*, 2013 WL 6185170, at *16 (E.D. Cal. Nov. 26, 2013)).

    2. Dr. Cogbill

Plaintiff next challenges the ALJ's evaluation of Dr. Cogbill's medical opinion, specifically finding fault with the ALJ's failure to include the limitations assessed in that opinion. Dr. Cogbill concluded plaintiff was capable of work where interpersonal contact was incidental to work performed, and supervision was "simple, direct, and concrete." Tr. 92. The ALJ found Dr. Cogbill's opinion less than persuasive, in part, because it was "excessively limiting in regard to social contact and poorly supported by its own medical summary." Tr. 27. Additionally, the ALJ found the opinion to be inconsistent with clinical observations of "appropriate behavior and cooperative, open, and engaged attitude" and with the consultative examiner's observations that he was "socially appropriate and polite." Tr. 27.

Although delivered with less-than-ideal clarity, the ALJ's supportability analysis is sufficient. Nothing contained within Dr. Cogbill's assessment sheds light on how she concluded plaintiff required such significant social limitations. For example, Dr. Cogbill wrote that plaintiff "plays cards often, visits with people in person, shops, handles money" and that plaintiff's "ability to interact appropriately at [treating] sources, along with the ability to follow treatment plans, and perform ADLs and IADLs support intact adult functional capacity over time, across a range of

activities and situations." Tr. 92. Dr. Cogbill stated plaintiff "does not receive a level of collateral support or mental health treatment that is usually associated with chronic or debilitating mental illness." Tr. 92. Dr. Cogbill then broadly concluded that there is enough "symptom information and detail of symptom severity, when taken in the context of the treatment" and the evidence of the record as a whole to support the limitations assessed. Notably, Dr. Cogbill does not point to what symptom information led to that conclusion. Given that the discussion of plaintiff's ability to perform ADLs, interact appropriately with others, and maintain intact functioning "over time, across a range of activities and situations" immediately preceded the significant functional limitations opined, it is unsurprising the ALJ found this opinion was not supported by its own medical analysis.

The ALJ's consistency analysis is similarly sufficient. Plaintiff's medical records show consistently he is able to behave appropriately and cooperatively in clinical settings. As such, it is unclear how Dr. Cogbill assessed greater limitations to interpersonal contact and supervision than those observed in plaintiff's medical records. This is not to suggest that plaintiff does not have social limitations, only that those assessed by Dr. Cogbill are not consistent with the record as a whole. Thus, the ALJ did not err in his evaluation of the supportability and consistency of Dr. Cogbill's medical opinion.

As such, the Court concludes the ALJ sufficiently evaluated plaintiff's symptom testimony and the medical opinions of Drs. Barsukov and Cogbill. Accordingly, this Court finds no grounds for reversing the ALJ's decision and the Commissioner's decision must be upheld.

///

///

///

///

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment accordingly.

DATED this 23rd day of July, 2024.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

///

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment accordingly.

DATED this 23rd day of July, 2024.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge